UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| WENDELL W. REINKING, | ) | |
| | ) | |
| Plaintiff, | ) | 3:07-cv-00212-JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| ALYESKA PIPELINE SERVICE CO., *et al.*, | ) | [Re: Motion at Docket 55] |
| | ) | |
| Defendants. | ) | |

## I. MOTION PRESENTED

At docket 55, plaintiff Wendell W. Reinking ("Reinking") moves for an order compelling limited discovery regarding an alleged conflict of interest, which he claims affected the decision-making of defendants Alyeska Pipeline Service Co., Alyeska Pipeline Service Co. Pension Plan for Operating Company Employees ("Plan"), Alyeska Pipeline Service Co. Pension Plan Retirement and Trust Committee ("Committee"), Alyeska Pipeline Service Co. Separation Benefits Plan No. 516 ("Separation Plan"), and Alyeska Pipeline Service Co. Human Resources Department ("HR Department") (collectively "APSC") in denying his claim for benefits. APSC opposes the motion at docket 61. Reinking replies at docket 67. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

The background of this litigation is recited at docket 44 and will not be repeated here. Reinking moves for "an order permitting limited written discovery and 2 depositions" regarding APSC's alleged structural conflict of interest in denying his claims for benefits under ERISA-governed pension plans. Reinking alleges that his discovery requests, dated December 30, 2008, are relevant to this conflict and are supported by the conflict analysis articulated by the Ninth Circuit in *Abatie v. Alta Health and Life Insurance Company*[1] and, more recently, by the Supreme Court in *Metropolitan Life Insurance Company v. Glenn*.[2] APSC opposes Reinking's motion in part, arguing that "[a]ll but a handful of his discovery requests are improper [because] . . . (1) they are not actually connected to the alleged conflict of interest, . . . (2) they are overbroad and unduly burdensome, . . . and/or (3) they are objectionable for other reasons under the discovery rules."[3] Reinking counters that his discovery requests merely seek to "develop information relating to the financial liability problem the employer/administrator would have faced if it granted Reinking's request to be included in the pension benefit plan . . . [as well as] disclosures that might demonstrate the extent to which [APSC] considered that problem when it weighed Reinking's request or when [APSC] adopted the various amendments to its pension plan, which it relied upon to deny Reinking his benefits."[4]

Reinking alleges that APSC operates under a conflict of interest because the company - as well as its employees, officers, and directors - stand to benefit from the denial of claims by "common law" employees who are improperly categorized as "leased" employees. Were APSC to approve claims by any such employees, Reinking argues, APSC would have to honor claims by all similarly situated employees, of which there are a large number. With respect to the Plan, Reinking contends that he was

---

[1]458 F.3d 955 (9th Cir. 2006).

[2]128 S. Ct. 2343 (2008).

[3]Docket 61 at 1.

[4]Docket 67 at 1.

improperly classified as a "leased" employee when, in fact, he was a "common law" employee entitled to benefits by virtue of *Burrey v. Pacific Gas and Electric Company*.[5] Reinking also contends that, after *Burrey,* APSC amended the Plan in 2000, and again in 2002 specifically to prevent "leased" employees from obtaining benefits.[6] Reinking also argues that APSC addressed the entitlements of its "leased" employees under the Separation Plan at the same time it amended the Plan. At bottom, Reinking alleges that APSC's financial interest in denying the claims of all of its "leased" employees constitutes a structural conflict of interest, which Reinking is entitled to investigate.[7]

APSC agrees that Reinking has alleged a possible conflict of interest, but contends that the facts do not support a finding that APSC operated under a structural conflict of interest that would give rise to extra-record discovery of the scope sought by Reinking. APSC argues that claims paid under the Plan and the Separation Plan cannot give rise to a structural conflict of interest for two reasons. First, because the Committee decides claims under the Plan, and those claims are paid out of the Pension Plan's Trust Fund ("Trust"), the company does not have a direct financial interest in the denial of claims. Similarly, because the HR Department decides claims under the Separation Plan, and those claims are paid out of the company's general assets, the company is not technically deciding whether to deny a claim. APSC also points out that because its contributions to the Trust are irrevocable and unclaimed funds do not revert to APSC, APSC does not have a financial interest in denying claims.

---

[5]159 F.3d 388 (9th Cir. 1998).

[6]Docket 55 at 4.

[7]The crux of Reinking's substantive claim is as follows: *Burrey* held that common law employees of Pacific Gas and Electric Company were eligible for participation in PG&E's health plan, despite being "leased employees," under the specific terms of the plan at issue. *Burrey*, 159 F.3d at 391. Because the 1990-1991 version of APSC's Plan defines "leased employee" in the same manner as the plan in *Burrey,* Reinking is clearly a participant in APSC's Plan. Docket 55, Exhibit F at 7. Therefore, because Reinking's participation in the Plan and benefits were at all times "vested and nonforfeitable," and Plan administrators are prohibited from cutting back future benefits without notice, Reinking argues that he is entitled to benefits despite later amendments to the Plan. *See generally* 29 U.S.C. §§ 1053-54.

-3-

Reinking's requests consist of: 14 requests for admission ("RFA"), 12 interrogatories ("Interrogatory"), and 10 requests for production ("RFP"). APSC has agreed to respond to RFA Nos. 1-2 and 7-8, Interrogatory Nos. 1 and 4-6, and RFP Nos. 7 and 10. The parties have agreed that APSC will provide responses to these requests after this court renders a decision with respect to the remaining requests. APSC objects or declines to respond to the remaining requests on the ground that the requests are overbroad, vague, irrelevant, or not connected to the alleged conflict. Reinking's requests may be categorized as follows: (1) requests seeking information pertaining to APSC's other "leased" employees (Interrogatory Nos. 7-12, RFP Nos. 1-3 and 8); (2) authentication requests relating to documents produced by APSC (RFA Nos. 9-14); (3) requests seeking information pertaining to Plan amendments (Interrogatory Nos. 2-3, RFP Nos. 4-6); and (4) requests seeking Plan data from the 2007 calendar year (RFA Nos. 3-6, RFP No. 9).[8] The court considers the appropriate scope of discovery below.

### III. DISCUSSION

When an ERISA-sponsored plan explicitly grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits[,]"[9] "a deferential standard of review [is] appropriate."[10] However, where a plan administrator is operating under a possible conflict of interest, that conflict must be weighed as a factor by a reviewing court.[11] Although a district court reviewing a plan administrator's decision to deny a claim is generally limited to the administrative record, it is within the district court's discretion to permit discovery into the nature, extent, and effect of a plan's structural conflict of interest on the decision-making process.[12] The Supreme Court has found

---

[8] *See* Docket 55, Exhibit M at 4-7.

[9] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[10] *Id.* at 111.

[11] *Id.* at 115.

[12] *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008) (citing *Abatie*, 458 F.3d at 970). In light of the *Metropolitan Life* and *Abatie* decisions,

-4-

such a conflict where an employer or insurance company evaluates the claim and pays claims with its own funds.[13] Even when a plan's benefits are paid out of a trust, as here, a structural conflict exists that must be considered as a factor in determining whether a plan administrator abused its discretion.[14] APSC attempts to distance itself from a structural conflict of interest by putting the decision-making in the hands of a Committee and the HR Department. This distance may cushion the blow of, but does not eliminate, the potential conflict.[15]

Although it is clear that *some* discovery is warranted regarding APSC's potential conflict of interest, the line between APSC's potential conflict and the merits of Reinking's claim is a blurry one.[16] In some cases district courts have allowed fairly broad discovery, while others grant only narrowly tailored discovery that pertains specifically to the alleged conflict of interest. As the court in *Winterbauer v. Life Insurance Company of North America* noted: "[t]o a large extent, the different outcomes reflect the courts' varying interpretations of *Glenn* itself."[17] The *Glenn* Court gave guidance on the scope of discovery when it set out a non-exhaustive list of factors, which mirror the types of material that an ERISA plaintiff might seek to discover, including, *inter alia*, (1) whether the administrator has a history of biased claims

---

evidence outside of the administrative record that "bears upon" a potential conflict of interest may be considered. *See Nolan v. Heald College*, 551 F.3d 1148, 1153-54 (9th Cir. 2009); *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

[13]*Glenn*, 128 S. Ct. at 2349-50.

[14]*Burke*, 544 F.3d at 1026.

[15]*Glenn*, 128 S. Ct. at 2350 ("[A] legal rule that treats insurance company administrators and employer alike in respect to the *existence* of a conflict can nonetheless take account of the circumstances to which MetLife points so far as it treats those, or similar, circumstances as diminishing the *significance* or *severity* of the conflict in individual cases.").

[16]*See Myers v. Prudential Ins. Co. of America*, 581 F. Supp. 2d 904, 913 (E.D. Tenn. 2008) ("Discovery into the substantive merits of a claim are still off limits - unless, of course, the court finds a serious procedural deficiency exists requiring substantive supplementation of the administrative record for a full and fair review.").

[17]2008 WL 4643942, at *5 (E.D. Mo. Oct. 20, 2008) (discussing various outcomes in the wake of *Glenn*).

administration and (2) whether the administrator had taken active steps to reduce potential bias and to promote accuracy in its benefits decisions, either by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits.[18] In light of *Glenn*'s guidance, it is logical to allow discovery on issues related to other relevant factors. In doing so, it is appropriate to respect the observation that the *Glenn* Court "made clear its view that it is neither 'necessary [n]or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict."[19]

APSC cites to an extensive body of post-*Abatie* case law, none of which is precedential,[20] in support of the general proposition that conflict discovery must be "narrowly tailored and cannot be a fishing expedition."[21] From this case law, APSC gleans a two-part test which the court "must" apply to determine the appropriate scope of conflict discovery: "(1) whether Reinking has demonstrated an actual - rather than theoretical - connection between the requested material and the alleged conflict of interest; and (2) if so, whether the requested discovery is adequately circumscribed and focused to avoid undermining ERISA's goal of providing efficient (inexpensive) and expedited review of benefit denial cases."[22] Reinking responds that the appropriate framework would require the court to balance "the competing interests in expeditious

---

[18]*Glenn*, 128 S. Ct. at 2351. The *Glenn* Court listed two other factors relating specifically to disability determinations, which are not applicable here. *Id.* at 2352.

[19]*Hogan-Cross*, 568 F. Supp. 2d at 413-14 (quoting *Glenn*, 128 S. Ct. at 2351).

[20]The only applicable post-*Glenn* decision of the Ninth Circuit is a non-precedential memorandum disposition, *see* Ninth Cir. R. 36-3, which vacated and remanded a district court's refusal to grant an ERISA plaintiff's motion to compel conflict of interest discovery, and suggested that "[because] Abatie and Glenn [have] materially altered the standard of review applicable to the review of a plan administrator's denial of benefits under ERISA," a district court may "consider[] evidence outside of the administrative record to determine the appropriate weight to accord the conflict of interest factor." *Wilcox v. Wells Fargo and Company Long Term Disability Plan*, 287 Fed. Appx. 602, 603-04 (9th Cir. Jul. 23, 2008).

[21]*See, e.g.*, *Groom v. Standard Ins. Co.*, 492 F. Supp. 2d 1202, 1205 (C.D. Cal. 2007)

[22]Docket 61 at 10.

claims resolution and the purpose of ERISA to promote and protect the rights of employees and beneficiaries."[23]

This court thinks Reinking's exposition better identifies the tension which informs the court's exercise of discretion in situations like that at bar, for it better reflects the twin goals of ERISA.[24] This court also thinks that following *Glenn's* admonition to avoid creating special ERISA rules and standards, the tension between the ERISA goals may be resolved by reliance on existing discovery principles, so long as they are strictly limited in their application to information which is relevant to and necessary to determine the extent of the alleged conflict. Thus, at a general level, this court agrees with a recent decision by a Tennessee district judge who wrote, "the parties must rely on the well-established, time tested procedures and tools provided by the Federal Rules of Civil Procedure to investigate an alleged procedural defect."[25] Federal Rule of Civil Procedure 26(b) states that:

> "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[26]

As the Tennessee district court explained, applying Rule 26 in the circumstance of an ERISA conflict discovery dispute "does not mean oceanic fishing expeditions will be

---

[23]Docket 67 at 9 (citing *Pemberton v. Reliance Standard Life Ins. Co.,* 2009 WL 89696, at *4 (E.D. Ky. Jan. 13, 2009).

[24]One goal of ERISA is to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously, *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005), while another is to promote and protect the rights of employees and beneficiaries. *Bruch*, 489 U.S. at 113.

[25]*Myers*, 581 F. Supp. 2d at 913.

[26]Fed. R. Civ. P. 26(b)(1).

-7-

permitted."[27] More pointedly, as that judge noted, "the Federal Rules of Civil Procedure allow the Courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water."[28]

To forestall any misunderstanding that could arise from an insufficiently sophisticated reading of the role of Rule 26 in the present context, it must be emphasized that in such cases, the "admissible evidence" referenced in Rule 26 means evidence relating to and necessary for understanding the significance of the conflict of interest. This "admissible" evidence will be considered by the district court in deciding the extent of the conflict for purposes of assessing the standard of review, but it will not ordinarily be admissible in deciding the merits. As the Ninth Circuit has explained:

> The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise.[29]

Applying the principles just set out, the court turns to the specific items in dispute.

**A. Discovery Relating to Other "Leased" Employees (Interrogatory Nos. 7-12, RFP Nos. 1-3 and 8)**

Reinking first seeks discovery regarding APSC's treatment and classification of other similarly situated "leased" employees. Interrogatory Nos. 7-10 seek information regarding the number, identity, and claim status of all "leased" employees who provided services to APSC between 1990 and 2004. Interrogatory Nos. 11-12 seek information pertaining to the various contracting companies who provided "leased" employees to APSC. RFP No. 1 seeks copies of every invoice provided to APSC by contracting companies who provided leased employees, while RFP Nos. 2-3 seek documents pertaining to the impact and cost of including "leased" employees in the Plan or

---

[27] *Myers*, 581 F. Supp. 2d at 913.

[28] *Id.*

[29] *Abatie*, 458 F.3d at 970.

-8-

Separation Plan. RFP No. 8 seeks information relating to claims of "leased" employees asserting "common law" employee status. Reinking believes that information about other claim denials or improper classifications "may provide significant circumstantial evidence as to the financial liability problem."[30] APSC counters that these requests are unduly burdensome, and that it would be "virtually impossible" to determine whether particular employees qualified as "leased."

Courts generally permit discovery of statistical data pertaining to a plaintiff's own claim, but are loathe to permit discovery of records pertaining to other employees' claims. For example, the court in *Hogan-Cross v. Metropolitan Life Insurance Company* concluded that a plaintiff may pursue "evidence of rates of claim denials and benefit terminations" so long as it was "reasonably calculated to lead to the discovery of admissible evidence."[31] Similarly, in *Bronner v. Unum Life Insurance Company of America*, the court permitted an ERISA plaintiff to pursue discovery to the extent he sought materials relating to defendant's policies, procedures, and statistics, but denied plaintiff's motion to compel to the extent his requests sought case-specific records of claims pertaining to other individuals.[32]

Reinking's requests in this category are not limited to statistics, but seek a broad range of documents pertaining to other similarly situated employees. Importantly, however, APSC characterizes its alleged conflict as follows: whether "Alyeska stands to benefit from denying Reinking's claims because many other 'leased' or 'contract' employees have similar benefit rights." Therefore, it appears that information pertaining to the benefits claims of other similarly situated "leased" employees bears directly on the conflict alleged - that APSC had a financial incentive to deny Reinking's claim. Such discovery is commonly permitted.[33] APSC has argued extensively about the "excessive

---

[30]Docket 67 at 13.

[31]568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008)

[32]2009 WL 248175, at **4-5 (N.D. Cal. Jan. 30 2009).

[33]*Winterbauer*, 2008 WL 4643942, at **4-5 (collecting cases).

-9-

burden" on APSC to review 14 years worth of employment records in an attempt to discover files that may only be of limited value to Reinking.

The court believes that such an undertaking could very well lead to relevant circumstantial evidence of a conflict of interest, but also finds that requiring a response to all of the requests would be excessively burdensome. APSC need not respond to Interrogatory Nos. 7 and 8, which would require a very detailed review of a great deal of information (to extract individual names of people who took specific actions, and then to update the address for each such person who took one of the specific actions). APSC need not respond to RFP No. 8, which would also involve a great deal of effort to isolate individual cases or proceedings. However, APSC must answer Interrogatory Nos. 9 and 10, and it must respond to RFP Nos. 2 and 3. By way of further explanation for the decision, It may be added that the court believes the gross data obtained from responses to Interrogatory Nos. 9 and 10 and RFP 2 and 3 will adequately inform judgment about the potential exposure associated with the developing law of "leased" employees. Finally, APSC need not respond to Interrogatory No. 12 or RFP No. 1, which seek information relating to the contractors engaged in leasing employees to APSC. Who provided the leased employees does not appear to be sufficiently relevant to warrant inquiry.

**B. Requests for Admission Regarding Reinking's Status as a "Leased" Employee (RFA Nos. 9-14)**

Reinking also requests that APSC admit that documents regarding its classification of him as a "leased" employee are authentic. APSC objects to these requests on the ground that the documents at issue are "not relevant to any issue properly before the Court in this litigation," but concede that such documents "may be relevant to an analysis of whether or not Mr. Reinking was a 'common law employee' under the *Darden* test."[34] The court finds that these documents appear to be relevant to Reinking's conflict allegations to the extent the information contained therein touches on

---

[34]Docket 55, Exhibit M at 5.

-10-

the number of "leased" employees hired by APSC. Moreover, because these requests seek only to establish the authenticity of documents already in Reinking's possession, the burden on APSC is minimal. Therefore, APSC is directed to respond to RFA Nos. 9-14.

**C. Discovery Relating to Plan Amendments (Interrogatory Nos. 2-3, RFP Nos. 4-6)**

In addition, Reinking seeks discovery relating to amendments to section 3.1 of the Plan. APSC argues that these requests have no bearing on any alleged conflict of interest. Reinking responds by pointing to the *Burrey* decision which, he claims, caused APSC to amend the Plan to squeeze "leased" employees out of participation in the Plan. After *Burrey*, Reinking contends, APSC realized that its Plan was exposed to claims by its many "leased" employees. Although these requests appear to seek information touching on the merits of Reinking's claims, the court believes that such material may also provide circumstantial evidence of a conflict of interest. On the other hand, the court must be mindful of the need to provide expeditious and inexpensive resolution of ERISA disputes, as well as the need to protect employee rights. The nature of some of the inquiries is such that a search could be extremely burdensome. The attorney-client privilege is also implicated in RFP No. 6. Based on all of the circumstances, ASPC is directed to respond to Interrogatory No. 2 and RFP No. 4. ASPC need not respond to Interrogatory No. 3 or RFP Nos. 5 and 6.

**D. Discovery Relating to 2007 Plan Data (RFA Nos. 3-6, RFP No. 9)**

Reinking also seeks discovery relating to Plan data - specifically, Reinking seeks information pertaining to (1) the 2007 value of APSC's Plan assets, (2) total benefits paid in 2007, (3) employer contributions in 2007, and (4) an annual report filed with the Internal Revenue Service in 2007, which reported that the Plan had 1,015 participants or beneficiaries.[35] In addition, Reinking seeks the production of the Summary Annual

---

[35] Docket 55, Exhibit L at 3-4.

Report of the Plan for 2007, dated on or about October 28, 2008.[36] APSC argues that none of this information has an actual connection to the conflict of interest. The court finds that discovery of the total number of Plan participants and beneficiaries (RFA No. 6), as well the benefits paid to those individuals in 2007 (RFA No. 4), is relevant to the alleged conflict to the extent that such information may bear on the Committee's decision to deny claims by "leased" employees. Moreover, assuming that APSC matches its contributions to the Plan (RFA No. 5) based on the number of participants, information regarding APSC's contributions to the Plan in 2007 would have a direct connection to its internal view of "leased" employees, particularly given that APSC's contributions are fixed and irrevocable. Finally, Reinking is also entitled to information pertaining to the total value of the Plan as of December 31, 2007 and a copy of the Summary Annual report for 2007. These items are sufficiently connected to the above requests and are not particularly burdensome. Therefore, APSC is directed to respond to RFA Nos.3-6 and RFP No. 9.

**E. Reinking's Request for Two Depositions**

Finally, Reinking requests two depositions related to conflict of interest issues. APSC agrees that, if Reinking is permitted to pursue conflict of interest discovery, two depositions are warranted.[37] In *Toven v. Metropolitan Life Insurance Company,* which was decided after *Abatie* but before *Glenn*, Judge Collins of the Central District of California affirmed a magistrate judge's denial of an ERISA defendant's motion for protective order, which permitted Toven to take three depositions "to make a proper conflict of interest determination."[38] Judge Collins concluded that a request for three depositions was "not inconsistent with *Abatie*," "sufficiently 'narrowly tailored' and . . . not 'a fishing expedition.'"[39] For the same reasons, the court concludes that Reinking

---

[36]*Id.* at 10.

[37]Docket 61 at 22.

[38]517 F. Supp. 2d 1174, 1176 (C.D. Cal. 2007).

[39]*Id.* (quoting *Groom*, 492 F. Supp. 2d at 1205).

-12-

may take two depositions, limited to seven hours apiece, on the conflict of interest issues described above.

## IV.  CONCLUSION

For the reasons above, Reinking's motion at docket 55 is **GRANTED** in part and **DENIED** in part as follows: (1) Reinking's request to compel responses to RFA Nos. 3-6 and 9-14 is **GRANTED**.  2) Reinking's request to compel responses to Interrogatory Nos. 2, 9 and 10 is **GRANTED**, and his request to compel responses to Interrogatory Nos. 3, 7, 8 and 12 is **DENIED**.  (3) Reinking's request to compel responses to RFP Nos. 2, 3, 4, and 9 is **GRANTED**, and his request to compel response to RFP Nos. 1, 5, 6 and 8 is **DENIED**.
.

DATED at Anchorage, Alaska, this 6th day of May 2009.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

Case 3:07-cv-00212-JWS   Document 68   Filed 05/06/09   Page 13 of 13